**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-13811

Non-Argument Calendar

————————————————

RICHARD C. MURPHY, III,
KATHLEEN T. MURPHY,

  his wife,

                                                    *Plaintiffs-Appellees,*

*versus*

AIRWAY AIR CHARTER, INC.,

  d.b.a. Noble Air Charter,

ALEX GUTIERREZ,

                                                    *Defendants-Appellants,*

VENTURE AIR SOLUTIONS, INC., et al.,

                                                    *Defendants.*

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cv-23654-BB

————————————————

_____

No. 25-11077
Non-Argument Calendar
_____

RICHARD C. MURPHY, III,
KATHLEEN T. MURPHY,
  his wife,

                                                        *Plaintiffs-Appellees,*

*versus*

AIRWAY AIR CHARTER, INC.,
  d.b.a. Noble Air Charter,
ALEX GUTIERREZ,

                                                        *Defendants-Appellants,*

VENTURE AIR SOLUTIONS, INC., et al.,

                                                        *Defendants.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cv-23654-BB
_____

Before JILL PRYOR, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

After Richard Murphy survived a plane crash, he and his wife sued for damages. A jury returned a $2.3 million verdict for Murphy against the pilot and the company that chartered the flight. The pilot appealed, arguing that the district court wrongly tried the

case under the Montreal Convention, gave incorrect instructions to the jury, and made an erroneous evidentiary ruling at trial.  After careful review, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In January 2022, pilot Alex Gutierrez and a single passenger, Richard Murphy, took off on the first leg of a round trip from Miami to the Bahamas.  As they approached their destination, the engines failed from fuel starvation.  Unable to restore fuel to the engines, Gutierrez was forced to bring the plane down in the ocean about five miles from the Bahamas.  Although the plane was lost, both Gutierrez and Murphy survived and were taken to the hospital for treatment.

Murphy and his wife sued Venture Air Solutions, Inc. (the plane's owner), the company that fueled the plane before the crashed flight, Gutierrez, and Noble Air Charter (which chartered the flight) in Florida state court.[1]  The complaint alleged four counts: (1) a claim against Noble under "Article 17 [of the] Warsaw Convention"; (2) a claim against Gutierrez also under Article 17; (3) a vicarious-liability claim against Venture; and (4) a negligence claim against the refueling company.  The refueling company removed the case to federal court based on admiralty jurisdiction.

---

[1] The charter company's name is Airway Air Charter, Inc., doing business as Noble Air Charter.  The parties refer to it as "Noble," and so will we.

Noble and Gutierrez moved to dismiss the complaint based on a liability waiver Murphy signed. The district court denied that motion because it concluded the waiver was unenforceable under the "Warsaw Convention"—a term it "used to refer to both" the Warsaw Convention and its successor, the Montreal Convention.

Venture moved unopposed for summary judgment on the vicarious-liability claim against it, and the district court granted the motion. That left only the three claims against the refueling company, Noble, and Gutierrez.

Then, Murphy moved for summary judgment on the liability waiver's non-enforceability under the Warsaw Convention. It was "undisputed that the Warsaw Convention applie[d]." But the parties didn't discuss "whether the original Warsaw Convention or its subsequent protocols—namely, the Hague Protocol and the Montreal Convention"—applied. The district court decided "the Montreal Convention [was] the current version of the Warsaw Convention in force in the United States," and that it applied to Murphy's flight because it was a round-trip flight from the United States. The district court explained that the Montreal Convention's plain language made the waiver unenforceable, so it granted summary judgment for Murphy on that issue even though Murphy originally brought his claim under the Warsaw Convention.

The case then went to a jury trial. At trial, Murphy sought to introduce two videos that he described as zoomed-in versions of previously admitted videos showing the preflight preparation of the plane. Noble and Gutierrez objected under Federal Rule of

Civil Procedure 37(c) that Murphy couldn't use the videos because he hadn't disclosed them.  The court admitted the videos.

The parties jointly submitted proposed jury instructions. Noble and Gutierrez requested that the district court instruct the jury to decide what percentage of responsibility Cessna, the plane's manufacturer (a non-party to the suit), bore for the crash.  But the district court did not name Cessna in the instructions or on the verdict form.  Instead, it instructed the jury to divide the responsibility for the crash among Murphy, Gutierrez, Noble, and the refueling company.

The jury found Murphy twenty percent responsible for his injuries, Gutierrez forty percent responsible, Noble forty percent responsible, and the refueling company not responsible.  Murphy, the jury found, suffered $2,912,888 in total damages.  The district court entered judgment for $2,329,670.40 (eighty percent of the total damage amount) for Murphy against Noble and Gutierrez.

After the judgment, Noble and Gutierrez moved for a new trial and for judgment as a matter of law.  They argued that the district court erred by:  (1) not naming Cessna on the verdict form; (2) admitting the preflight videos into evidence; (3) holding Gutierrez jointly and severally liable with Noble for the full amount of the judgment; and (4) trying the case under the Montreal Convention when Murphy's complaint alleged that the Warsaw Convention applied.

The district court denied the motions.  As to the verdict form, it concluded that Murphy's claims were brought under a

treaty and federal maritime law, which didn't allow for allocation of fault to a third party.  And even if allocation of fault to a third party was allowed, there was insufficient evidence to support including Cessna.  As to the evidentiary ruling, the district court ruled that the admission of the videos was harmless.  As to the joint-and-several-liability issue, the court reiterated that Murphy's claims "arose under the Montreal Convention, and more importantly, general maritime law," and, thus, "joint and several liability govern[ed] the final judgment."  Finally, as to trying the case under the Montreal Convention, it conceded that "as a technical matter, [Murphy pleaded] claims under the incorrect governing law," but he pleaded facts putting the defendants on notice of the nature and grounds of his claims and that the defendants were not prejudiced by the application of the Montreal Convention.  Gutierrez appeals the final judgment.

## STANDARD OF REVIEW

We review de novo whether a complaint states a claim for relief.  *See Honduras Aircraft Registry, Ltd. v. Gov't of Honduras*, 129 F.3d 543, 546 (11th Cir. 1997).  We review de novo the district court's interpretation of a treaty. *World Holdings, LLC v. Fed. Republic of Germany*, 701 F.3d 641, 649 (11th Cir. 2012).  And we review for abuse of discretion a district court's evidentiary rulings. *S. Grande View Dev. Co., Inc. v. City of Alabaster*, 1 F.4th 1299, 1305 (11th Cir. 2021).

## DISCUSSION

We divide our discussion in four parts.  First, we review whether the district court erred by trying Murphy's claims against Noble and Gutierrez under the Montreal Convention.  Second, we consider whether the district court erred by holding Gutierrez jointly and severally liable for the full amount of the judgment.  Third, we address Gutierrez's contention that the district court erred by not naming Cessna in the jury instructions and on the verdict form.  And fourth, we discuss whether the district court erred by admitting the videos of the preflight preparation of the plane.

*1. The district court did not err in applying the Montreal Convention to Murphy's claims.*

Gutierrez first argues that the district court erred by applying the Montreal Convention to Murphy's claims.  He says the district court's "very late change to the applicable international treaty was unduly prejudicial" to his case.  But the district court correctly concluded that the Montreal Convention was the operative version of the Warsaw Convention in force in the United States and appropriately applied that governing law to Murphy's claims.

The Warsaw Convention is a treaty aimed at "achieving uniformity of rules governing claims arising from international air transportation." *E. Airlines, Inc. v. Floyd*, 499 U.S. 530, 552 (1991). It was signed in 1929 and ratified by the United States in 1934. *Id.* at 532 n.1, 535.  The Warsaw Convention was amended by several later agreements, including the Hague Protocol of 1955, the Montreal Agreement of 1966, the Guatemala City Protocol of 1971, and

Montreal Protocol Number 4. *Id.* at 547–50; *see El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 174 (1999).

Finally, in 1999, the United States signed the Montreal Convention, and the Senate ratified it in September 2003. *See Eli Lilly & Co. v. Air Exp. Int'l USA, Inc.*, 615 F.3d 1305, 1308 (11th Cir. 2010). The Montreal Convention sought "to modernize and consolidate the Warsaw Convention and related instruments." *See* Convention for the Unification of Certain Rules for International Carriage by Air Preamble, May 28, 1999, S. Treaty Doc No. 106–45 (hereinafter "Montreal Convention"). It "is the exclusive means by which international air travel passengers can seek damages for personal injury" in cases it covers. *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1056 (11th Cir. 2009).

The Convention covers flights "within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party." *See* Montreal Convention art. 1(2). Thus, the Montreal Convention provided the exclusive remedy for Murphy's injuries from his Florida-based round-trip flight to the Bahamas, even though the Bahamas has not signed the Montreal Convention. *Id.*; *see* 8A Am. Jur. 2d *Aviation* § 139 ("The Montreal Convention . . . includes within its scope a round-trip ticket from the United States with an agreed stopping place within another state, even if that state is not a signatory to the [C]onvention.").

Because the Montreal Convention was the operative version of the Warsaw Convention in the United States when the plane

crash occurred, it was appropriate for the district court to analyze Murphy's claims and Gutierrez's potential liability under the Montreal Convention. *See Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 711 (1974) ("[A] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary."); *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co.*, 522 F.3d 776, 781 (7th Cir. 2008) ("In this case, the incident giving rise to Sompo's claim took place . . . after the ratification of MP4 but several years before the Montreal Convention became effective in the United States.  Therefore, NCA's liability here is governed by the Warsaw Convention as amended by the MP4, not by the new Montreal Convention.").

Murphy's complaint was sufficient to state a claim under the Montreal Convention, despite its references in Counts I and II to "Article 17 [of the] Warsaw Convention."  To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  As the Supreme Court has explained, that rule "do[es] not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).  Thus, in assessing whether a complaint states a claim, the key inquiry is not the complaint's identification of the governing law, but instead whether it pleads "facts sufficient to show that [the] claim has substantive plausibility." *Id.* at 12.

We've explained that "[a] complaint need not specify in detail the precise theory giving rise to recovery.  All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests."  *MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*, 60 F.4th 1314, 1319 (11th Cir. 2023) (quoting *Sams v. United Food & Com. Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989)); *see also Doss v. S. Cent. Bell Tel. Co.,* 834 F.2d 421, 424 (5th Cir. 1987) ("[T]he fact that a plaintiff pleads an improper legal theory does not preclude recovery under the proper legal theory." (citing *Oglala Sioux Tribe of Indians v. Andrus,* 603 F.2d 707, 714 (8th Cir. 1979))); *Oglala Sioux Tribe*, 603 F.2d at 714 ("The function of an affirmative federal pleading, under Fed. R. Civ. P. 8(a)(2), is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved."); *Hatmaker v. Mem'l Med. Ctr.,* 619 F.3d 741, 743 (7th Cir. 2010) ("Even citing the wrong statute needn't be a fatal mistake, provided the error is corrected in response to the defendant's motion for summary judgment and the defendant is not harmed by the delay in correction.").

Here, Gutierrez was on notice of the claim and was not prejudiced by the application of the Montreal Convention.  Indeed, Gutierrez filed a notice of supplemental authority with the district court before it ruled that the Montreal Convention was the governing law, arguing that "[t]he Warsaw Convention of 1929 should be interpreted in conjunction with its related treaties, including the Montreal Convention of 1999."

Gutierrez has failed to show how the district court's application of that law at trial prejudiced his defense. Murphy's cause of action under the Montreal Convention was virtually identical to what the Warsaw Convention provided. The elements of the cause of action are the same under both Conventions. *Compare El Al*, 525 U.S. 155, 164 (describing elements for coverage under Warsaw Convention Article 17), *with Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1172 (11th Cir. 2014) (listing elements of a claim under Montreal Convention Article 17). And we've explained that, because the Montreal Convention was modeled on the Warsaw Convention, "we may look to the extensive body of Warsaw Convention case law as persuasive authority in interpreting the Montreal Convention." *Underwriters at Lloyds Subscribing to Cover Note B0753PC1308275000 v. Expeditors Korea Ltd.*, 882 F.3d 1033, 1041 n.10 (11th Cir. 2018) (citing *Campbell*, 760 F.3d at 1176–77).

Gutierrez does not dispute that the elements of the Warsaw and Montreal Convention claims are the same, but he contends that he was prejudiced because "[t]he recoverable damages and defenses available . . . under Warsaw versus Montreal are distinct," and he targeted his discovery toward the defenses available under the Warsaw Convention. He contends that, before the Montreal Convention, a defendant would not be liable for damage if it proved it had "taken all necessary measures to avoid the damage or that it was impossible for them to take such measures," *see* Protocol to Amend the Convention for Unification of Certain Rules Relating to International Carriage by Air Article 20, September 28, 1955, S. Treaty Doc No. 107-14, but the Montreal Convention

provides that the defendant will be strictly liable for damages from an accident up to 100,000 special drawing rights,[2] and can avoid further liability by showing that the damage was (a) not due to its negligence or (b) solely due to a third party's negligence, *see* Montreal Convention art. 21(2). Although the exoneration defenses under the two Conventions are framed differently, they are functionally the same in that they allow a defendant to limit its liability by showing that it took care to prevent the accident. And that is precisely what Gutierrez did in this case, presenting evidence—through his cross-examination of plaintiff's expert and through his own testimony—that Gutierrez was not responsible for the accident and that Cessna was responsible instead. He has not explained how his preparation through discovery or his strategy at trial would have differed had the complaint pleaded its claims under the Montreal Convention rather than the Warsaw Convention.

Because Murphy pleaded facts putting Gutierrez on notice of his claim under the Montreal Convention, and because Gutierrez has not shown he was prejudiced by the application of that Convention, the district court did not err in trying the case under the Montreal Convention.

---

[2] A special drawing right is "an artificial currency, published daily by the International Monetary Fund, which fluctuates based on the global currency market." *Eli Lilly*, 615 F.3d at 1308 (citation omitted).

*2. The district court did not err in its judgment against Gutierrez.*

The judgment didn't explicitly say the defendants were jointly and severally liable, but it stated that Murphy was entitled to $2,316,782.40 "from [d]efendants [Noble] and Alex Gutierrez." And the district court clarified in denying the defendants' motion for a new trial that "since the claims against Noble and Gutierrez arose under the Montreal Convention, and more importantly, general maritime law," the defendants were jointly and severally liable. Gutierrez argues that the district court was wrong to hold him jointly and severally liable for the plane crash. First, he contends that the district court's only basis for applying joint and several liability was an erroneous conclusion that principles of maritime law applied. Second, he argues that, even under maritime law, the district court shouldn't have applied joint and several liability. We disagree. The district court properly applied the Convention and background principles of maritime law to hold Gutierrez jointly and severally liable for the judgment.

First, the district court didn't err by looking to maritime tort law for the rules governing the distribution of liability among defendants. When analyzing claims under the Montreal Convention, we first look to the Convention itself, which expressly preempts state law causes of action that fall within its scope. *See* Montreal Convention art. 29 ("In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are

set out in this Convention."). So, when the Montreal Convention speaks to an issue of liability, that is the end of the inquiry. *Eli Lilly*, 615 F.3d at 1313 (explaining that identical text in the Warsaw Convention preempted state actions within the Convention's scope). But here, the Montreal Convention does not say whether codefendants are jointly and severally liable. The Convention provides that, in cases of death or injury, a carrier is strictly liable for the first 100,000 special drawing rights for each passenger, and liable for additional damages unless it can show that either (1) its negligence did not cause the damages, or (2) another party's negligence was the only cause of the damages. Montreal Convention art. 21(2). Later, it provides that agents of a carrier are subject to the same conditions and limits of liability as the carrier itself. *Id.* arts. 30(1), 43. And in other situations, it directly speaks to the apportionment question. *See, e.g.*, *id.* art. 36(3) (explaining that successive carriers "will be jointly and severally liable to the passenger"). But the Convention does not provide a rule for distribution of liability as between a carrier and its agent, so we must look elsewhere for the answer.

When the Montreal Convention does not speak to an issue, we apply the relevant substantive provisions of the law that would govern the claims in the absence of the Convention. In *Zicherman v. Korean Air Lines Co.*, 516 U.S. 217 (1996), the Supreme Court explained the proper approach for answering questions about damages that the Warsaw Convention did not resolve. It considered and rejected the approach of applying maritime law—for

24-13811                Opinion of the Court                15

uniformity's sake—as a gap-filling mechanism for every cause of action brought under the Warsaw Convention:

> The Second Circuit, moved by the need to "maintain a uniform law under the Warsaw Convention," held that general maritime law governs causes of action under the Convention, whether the accident out of which they arise occurs on land or on the high seas. We think not. As we have discussed, the Convention itself contains no rule of law governing the present question; nor does it empower us to develop some common-law rule—under cover of general admiralty law or otherwise—that will supersede the normal federal disposition. Congress may choose to enact special provisions applicable to Warsaw Convention cases, as some countries have done. Absent such legislation, however, Articles 17 and 24(2) provide nothing more than a pass-through, authorizing us to apply the law that would govern in [the] absence of the Warsaw Convention.

*Id.* at 229.

In *Zicherman*, there was "little doubt" that the governing law was the Death on the High Seas Act, *id.*, which provides a cause of action "[w]hen the death of an individual is caused by wrongful act, neglect or default occurring on the high seas beyond 3 nautical miles from the shore of the United States," *see* 46 U.S.C. § 30302. But, because Murphy was injured, not killed, in the plane crash, the Act does not apply to his case.

16                      Opinion of the Court                    24-13811

When the Act does not itself cover a tort, the applicability of maritime law depends on the nature, not the location, of the tort. *Sisson v. Ruby*, 497 U.S. 358, 361 (1990). The tort must present a "potential hazard to maritime commerce." *Id.* at 362 (quoting *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 675 n.5 (1982)). That element is satisfied in a plane-crash case because "an aircraft sinking in the water could create a hazard for the navigation of commercial vessels in the vicinity." *Id.* (quoting *Foremost*, 457 U.S. at 675 n.5).

In addition to posing a threat to maritime activity, the tort must also "bear a significant relationship to traditional maritime activity." *See Exec. Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268 (1972) ("We hold that unless such a relationship exists, claims arising from airplane accidents are not cognizable in admiralty in the absence of legislation to the contrary."); *see also LaCourse v. PAE Worldwide Inc.*, 980 F.3d 1350, 1357 (11th Cir. 2020) ("Translation: Where a death occurs on the high seas, DOHSA applies, full stop; separately, in a non-DOHSA case, maritime jurisdiction might still exist, provided that there is a maritime nexus."). Specifically, we've held that a flight between the United States and the Bahamas does bear a significant relationship to traditional maritime activity. *Miller v. United States*, 725 F.2d 1311, 1315 (11th Cir. 1984) ("[T]here is a significant relationship to traditional maritime activity, because the trip between the Bahamas and the United States has traditionally been accomplished by ship, and would, of necessity, have to be accomplished by ship but for the introduction of the airplane into this forum."). Thus, returning to the inquiry from *Zicherman*, the law that would govern this case in the absence of the Convention

is maritime law. *See* 516 U.S. at 229. And because the Convention is silent on the issue of distribution of damages between codefendants, we pass through it and apply the substantive provisions of general maritime tort law. *See id.*

Applying general maritime law, the district court was correct that joint and several liability is the rule. *See Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 (1979) (explaining that joint and several liability "is in accord with the common law, which allows an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, even if the concurrent negligence of others contributed to the incident."); *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220–21 (1994) (referencing "the well-established principle of joint and several liability" and explaining that "[j]oint and several liability applies when there has been a judgment against multiple defendants" in the maritime context). So, the district court rightly held Gutierrez jointly and severally liable for the judgment.

Gutierrez points to case law adopting a proportionate responsibility rule in maritime cases, citing *United States v. Reliable Transfer Co.*, 421 U.S. 397, 411 (1975), and *Sunderland Marine Mut. Ins. Co. v. Weeks Marine Const. Co.*, 338 F.3d 1276, 1280 (11th Cir. 2003). But that rule is not mutually exclusive with joint and several liability. True, "when two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the

parties proportionately to the comparative degree of their fault." *Reliable Transfer*, 421 U.S. at 411; *see also Sunderland*, 338 F.3d at 1280. But as the Supreme Court has explained, the joint and several liability rule is not inconsistent with a proportionate share rule. *See McDermott*, 511 U.S. at 220 (explaining that the joint-and-several-liability principle "was in no way abrogated by *Reliable Transfer*'s proportionate fault approach" and that "there is no tension between joint and several liability and a proportionate share approach to settlements"). Rather, joint and several liability makes the defendants bear the risk that factors outside the plaintiff's control will limit his recovery. *Id.* at 221. Thus, joint and several liability "can result in one defendant's paying more than its apportioned share of liability when the plaintiff's recovery from other defendants is limited by factors beyond the plaintiff's control, such as a defendant's insolvency." *Id.*

Finally, Gutierrez argues that, after judgment was entered, Murphy settled his claims against Noble, so Gutierrez's liability should be reduced to his equitable share—forty percent of Murphy's damages. Gutierrez points to a joint stipulation between Murphy, Noble, and Venture, the crashed airplane's owner. The stipulation says that, in exchange for Murphy's voting in favor of Noble's proposed bankruptcy plan, Noble and Venture "will vacate, or cause the vacatur of" a judgment against Murphy for Venture's attorney's fees.

Gutierrez's argument is unavailing. First, he never argued to the district court that it should reduce the judgment based on

the proportionate share rule, and we rarely consider issues that were "not raised in the district court and raised for the first time in an appeal." *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (quotation omitted).

Second, even if we were to consider the issue, the stipulation Gutierrez points to is not a settlement of Murphy's claims against Noble, but rather a stipulation to vacate an order requiring Murphy to pay Venture's legal fees. The stipulation does not release Noble from the judgment against it. Indeed, the stipulation makes clear that "Murphy does not waive any rights to recover from any person or entity, including any insurer, as a judgment creditor" in his case against Noble and Gutierrez. And after vacating the attorney's-fees judgment against Murphy, the district court entered an "amended final judgment" entitling Murphy to the same amount as before from "Noble Air Charter and Alex Gutierrez." So, Gutierrez has not shown that Murphy settled his claims against Noble such that the proportionate share rule would apply.

### 3. The district court did not err by omitting Cessna from the jury instructions and verdict form.

Next, Gutierrez argues that the district court erred by denying his request to "incorporate a jury instruction for the apportionment of fault against Cessna" for its design of the airplane. We disagree because the district court's jury instructions correctly instructed the jury.

Although our review of the legal correctness of a jury instruction is de novo, "we review for abuse of discretion questions

concerning the phrasing of an instruction or a district court's refusal to give a requested jury instruction." *United States v. Mayweather*, 991 F.3d 1163, 1174 (11th Cir. 2021) (cleaned up). When a district court refuses to give an instruction the defendant requests, we reverse "only if the [proposed] instruction (1) is correct, (2) is not substantially covered by other instructions which were delivered, and (3) deals with some point so vital that the failure to give the requested instruction seriously impaired the defendant's ability to defend." *Id.* at 1175 (cleaned up). Here, the district court's jury instructions were legally correct, and it did not abuse its discretion by declining to name Cessna on the apportionment part of the verdict form.

The district court instructed the jury on "Noble and Guiterrez's affirmative defenses under the Montreal Convention." Specifically, the instructions explained that, if Murphy proved an accident occurred, Noble and Gutierrez had the burden to show by a preponderance of the evidence that (1) the damage was not due to their "negligence or other wrongful act or omission"; or (2) the damage "was solely due to the negligence or other wrongful act or omission of a third party." Additionally, the district court instructed the jury that it must decide whether Murphy "was himself negligent and, if so, whether that negligence was a contributing legal cause" of his damages. Those instructions accurately set out the defenses available to Noble and Gutierrez under the Convention. *See* Montreal Convention arts. 20, 21(2)

On the verdict form, the district court instructed the jury to "[s]tate the percentage of any negligence or fault, which was a legal cause of injury" that was attributable to the following people: Murphy, Noble, Gutierrez, and the refueling company. The instructions said the total percentage of fault "must equal 100%." The district court advised the parties that it would instruct the jury on the third-party-exoneration defense and that the defendants "may make an argument . . . with regard to a particularly named individual which is a third party," but that it saw nothing in the law that required it to name that third party on the verdict form in a case under the Montreal Convention.

Gutierrez says the court should have included Cessna in the apportionment section of the verdict form because the Montreal Convention "expressly allows for exoneration of the [d]efendant if the jury finds liability of a third party such as Cessna." The Convention does provide that a defendant may absolve itself of liability beyond the strict-liability threshold of 100,000 special drawing rights by proving that "such damage was *solely* due to the negligence or other wrongful act or omission of a third party." *See* Montreal Convention art. 21(2)(b) (emphasis added). The jury instructions explained that feature of the law. But the Convention does not provide for partial exoneration due to negligence of a third party.

Here, Gutierrez was allowed to argue, and in fact did argue in closing, that Cessna was responsible for the accident:

> There's one thing that's not in dispute here, and even Mr. Pottinger agreed. Cessna designed this aircraft so that any fuel available in the auxiliary tank is not available for the pilot when he needs it the most, when his engine quits. Whether it be a little bit of fuel in the auxiliary tank, enough to get the engine started and get the five miles to the island, or a lot of fuel, as they're suggesting, the way Cessna designed this aircraft, the pilot can't use that fuel when he needs it the most.

Had the jury found that argument persuasive, based on the instructions the district court gave, it could have entered a verdict indicating that Noble and Gutierrez were not responsible. Instead, the jury apportioned twenty percent of the fault for the accident to Murphy, forty percent to Noble, and forty percent to Gutierrez. Thus, even assuming that Gutierrez's requested instruction was correct, the district court's failure to include it would not constitute reversible error because the point was "substantially covered by other instructions which were delivered," and it did not "seriously impair[] the defendant's ability to defend." *See Mayweather*, 991 F.3d at 1175.

### 4. *The district court did not abuse its discretion by admitting the pre-flight videos into evidence.*

Finally, Gutierrez argues that the district court erred when it admitted "enhanced" videos of the airplane being refueled and prepared for flight, because Murphy did not include those versions of the videos in his Federal Rule of Civil Procedure 26 disclosures.

But the district court acted within its discretion by allowing the jury to consider the videos.

When a party does not satisfy its duty to disclose a piece of information or a witness under rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). "The district court has considerable discretion in determining whether exclusion is proper." *Henderson v. Ford Motor Co.*, 72 F.4th 1237, 1243 (11th Cir. 2023) (citing *Murphy v. Magnolia Elec. Power Ass'n*, 639 F.2d 232, 234–35 (5th Cir. 1981)). We will reverse only if we conclude "the district court has made a clear error of judgment, or has applied the wrong legal standard." *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 591 (11th Cir. 2019) (quotation omitted).

Here, the district court applied the correct legal standard. It concluded the video evidence was harmless given that it was "the same video" with "the same depictions" as the previously disclosed exhibits. When Noble and Gutierrez moved for a new trial based on the admission of the videos, the district court reaffirmed that ruling. Citing rule 37(c), the district court explained that, assuming the zoomed-in videos were considered new and undisclosed evidence, "the delayed disclosure of the zoomed-in videos [was] harmless" because they "were virtually identical to the videos [Murphy] initially" disclosed.

There is no basis in the record to conclude that the district court made a "clear error of judgment" in concluding that the

videos were virtually identical and should be admitted.  *See Taylor*, 940 F.3d at 591.  Murphy's expert who directed the preparation of the zoomed-in video footage testified at trial that the videos were modified only by zooming in, not by enhancing or changing any of the pixels.  Gutierrez does not point to any substantive difference between the videos Murphy disclosed and the ones that were shown to the jury at trial, other than the fact that they were zoomed in.  *See Taylor*, 940 F.3d at 594 (concluding a district court "acted well within the bounds of its discretion" in allowing the jury to consider expert opinions that were not disclosed in a rule 26 expert report); *Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1341–42 (11th Cir. 2020) (concluding a district court did not abuse its discretion by admitting an expert's supplemental affidavit submitted after the expert had been deposed and after the expert disclosure deadline had passed).

Gutierrez argues that he was prejudiced because one of the people shown in the videos was a witness who had already testified and been released, so Gutierrez was not able to cross-examine the witness about the contents of the videos.  But, as Gutierrez admits, that witness was dismissed because "the parties agreed to take his trial testimony once during [Murphy's] case in chief."  So, Gutierrez would not have been able to cross-examine him regardless of whether the jury was shown the previously disclosed videos or the zoomed-in versions that the district court concluded were "virtually identical."  In short, the district court did not abuse its discretion by concluding the zoomed-in videos were harmless and allowing the jury to see them.

## CONCLUSION

The district court did not err in trying the case under the Montreal Convention, in holding Gutierrez jointly and severally liable for Murphy's damages, in omitting any reference to Cessna from the jury verdict form, or in allowing the jury to see zoomed-in versions of preflight videos that Murphy had previously disclosed.  We affirm.

**AFFIRMED.**